## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) | Case No. 19-11466 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Appellant, | ) | BAP No. 19-51 |
| | ) | |
| v. | ) | Case No. 19-cv-01711-RGA |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

## DEBTORS' EMERGENCY MOTION TO EXTEND STATUS QUO PROVISIONS OF SALE ORDER OR, IN THE ALTERNATIVE, FOR RECONSIDERATION OR MODIFICATION OF THE ORDER GRANTING STAY PENDING APPEAL

Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby submit this Emergency Motion (this "Motion") to extend the "status quo" provisions of the Sale Order (as defined below) or, in the alternative, for reconsideration or modification of the Order Granting Stay Pending Appeal (as defined below).  In support of this Motion, the Debtors rely on the *Declaration of Miriam Hogan in Support of Debtors' Emergency Motion to Extend Status Quo Provisions of Sale Order or, in the Alternative, for Reconsideration or Modification of Order Granting Stay Pending Appeal* (the "Hogan Declaration"), a copy of

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

which is attached hereto as **Exhibit A** and the Declaration of Mark Minuti Pursuant to Rule 8013(d)(3) of the Federal Rules of Bankruptcy Procedure which is attached hereto as **Exhibit B**, and respectfully represent as follows:

<u>PRELIMINARY STATEMENT</u>

On September 16, 2019, the Court entered an order (the "<u>Order Granting Stay Pending Appeal</u>") [Docket No. 17], granting the emergency motion of the United States of America, on behalf of the Department of Health and Human Services, acting through its designated component, the Centers for Medicare and Medicaid Services ("<u>CMS</u>") for a stay, pending appeal, of the *Order Under 11 U.S.C. §§ 105, 106, 363, 365, 503, 507, and 527 (A) Approving Asset Purchase Agreement with Thomas Jefferson University Hospitals, Inc., (B) Authorizing Sale of Certain of Debtor's Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtor's Executory Contracts, and (D) Granting Related Relief* (the "<u>Sale Order</u>") [Bankr. Case No. 19-1146, Dkt. ("<u>Bankr. Dkt.</u>") 681].

The Sale Order both approved a significant sale transaction and granted certain injunctive relief to prevent third parties, including CMS and the Pennsylvania Department of Health (the "<u>DOH</u>"), from taking actions before the sale closing that would jeopardize the Debtors' ability to close on the sale.  Specifically, paragraph 34 of the Sale Order enjoined third parties from taking action that would "affect the ownership, transferability, validity, enforceability, or effectiveness of the Purchased Assets, or the performance or consummation of the Transaction or any of the decrees herein."   <u>Sale Order</u>, ¶34.  With respect to the DOH, the Sale Order provided, in pertinent part and with the DOH's agreement, that paragraph 34 would stay the DOH "from taking any further steps in connection with the Debtor's closure process, or otherwise seeking the revocation, surrender and/or termination of the Debtor's hospital license, prior to September 30, 2019." <u>Id</u>.

In arguing to this Court for a stay pending appeal, CMS asserted that (a) the Debtors *would not be harmed* by a stay pending appeal, because such a stay would merely preserve the status quo, and (b) CMS *would be harmed* in the absence of a stay because the Debtors could close on the sale rendering the appeal statutorily moot pursuant to section 363(m) of Title 11 of the United States Code (the "Bankruptcy Code").  Unpersuaded by the Debtors' concern that a delay could jeopardize the ability to proceed with and close on the sale, the Court accepted CMS's argument that there was no urgent need to close quickly, and granted the stay pending appeal.

Notwithstanding CMS's assurances to this Court, in the afternoon of September 30, 2019 (a meaningful Jewish holiday), the DOH contacted the Debtors to advise that they would be making an unannounced site visit the next day – **October 1, 2019** (the second day of the same Jewish holiday) – to conduct a "Closure Survey" for the hospital.  When advised that key representatives for the hospital would not be available, the DOH, through its counsel, refused to reschedule the visit, and further advised that DOH could terminate the hospitals license as early as October 1, 2019.

Accordingly, the Debtors' concerns have been proven well-founded – the Debtors face unilateral action beyond their control that CMS will use to render the Sale Order moot because the Debtors will no longer be able to close on the sale.  Thus, while arguing that the potential for statutory mootness created a risk of harm to CMS to justify a stay pending appeal, CMS now stands on the verge of exacting the very same harm upon the Debtors.  In the absence of emergency relief, CMS may successfully use the stay pending appeal not as a shield, but as a sword – unfairly benefitting from the delay to effectively kill the underlying sale.

To prevent this injustice, the Debtors respectfully seek emergency relief from the Court. The Debtors seek an order by this Court extending the terms of the injunction previously entered

by the Bankruptcy Court in paragraph 34 of the Sale Order to ensure that circumstances do not change to nullify the transaction while this appeal runs its course.  Alternatively, in light of changed circumstances, the Debtors ask that the Court either reconsider or modify the Order Granting Stay Pending Appeal to either permit the Debtors to close on the sale, or otherwise ensuring that the Debtors will be able to close on the sale once the Sale Order is affirmed.

## BACKGROUND

### A.     The Underlying Bankruptcy Court Proceedings

1.     The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 30 and July 1, 2019  in the Bankruptcy Court.

2.     On July 9, 2019, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures Relating to the Sale of the Debtors' Residents Program Assets, Including Approving a Break-Up Fee, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, Including Notice of Proposed Cure Amounts, and (C) Approving the Form and Manner of Notice Relating Thereto, and (D) Scheduling a Hearing to Consider the Proposed Sale; and (II)(A) Approving the Sale of the Debtors' Residents Program Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (III) Granting Related Relief* [Bankr. Dkt. 142] (the "Sale Motion").

3.     Following a comprehensive two-day hearing (the "Sale Hearing"), the Bankruptcy Court granted the Sale Motion, authorizing the Debtors to, *inter alia*, transfer Hahnemann University Hospital's ("Hahnemann") graduate medical education training program assets (the "Residency Program Assets") to Thomas Jefferson University Hospitals, Inc. ("Jefferson"), acting on behalf of a consortium of non-profit entities including Jefferson, Temple University Health System, Albert Einstein Health Network, Main Line Health, Inc., Christiana Care

-4-

Health System, and The Cooper Health Systems, a New Jersey Non-Profit Corporation (collectively, the "Consortium").  The Bankruptcy Court entered the Sale Order on September 10, 2019.

4.      In the Bankruptcy Court, CMS consistently opposed the Sale Motion and any attempt by the Debtors to transfer Hahnemann's Residency Program Assets, which includes a transfer of the Debtors' rights with respect to Hahnemann's Medicare provider agreement. In short, CMS argued that under applicable Medicare regulations, at least as those regulations are construed by CMS, a provider agreement may only be transferred in connection with a "change of ownership" of a hospital, which CMS contends, among other things, requires the continued operation of the hospital from the same location.  In addition, CMS argued that, in the bankruptcy context, such a transaction could also only be approved (assuming the aforementioned change of ownership requirement was satisfied), by treating the Medicare provider agreement as an executory contract, assuming it and assigning it pursuant to section 365 of the Bankruptcy Code with the buyer/assignee accepting unlimited successor liability with respect thereto.

5.      The Bankruptcy Court overruled CMS's objections, finding that (a) the unique facts and circumstances of the proposed transaction between the Debtors and the Consortium satisfied the requirements for a change of ownership under the applicable Medicare regulations, to the extent such regulations were required to be satisfied (including that of continued operations), and (b) a Medicare Provider Agreement is a statutory entitlement that may be sold free and clear of interests pursuant to section 363 of the Bankruptcy Code, and not an executory contract subject to section 365 of the Bankruptcy Code.

6.      Recognizing CMS's likely appeal of the Sale Order, and to afford CMS an opportunity to seek relief from this Court, the Bankruptcy Court denied the Debtors' request

for full relief from Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, and instead ordered that, other than with respect to certain relief in paragraph 34 of the Sale Order, the general relief granted in the Sale Order would not become effective and enforceable until seven calendar days following its entry.  Sale Order, ¶ 34.  Within this time period, the Order Granting Stay Pending Appeal was granted.

7.     To address the Debtors' concerns that any delay in closing on the sale might give third parties, including CMS, an opportunity to take actions that could impair the Debtors' and the Consortium's ability to close, the Court included, in paragraph 34 of the Sale Order, injunctive relief that stayed parties, other than the Debtors, from taking actions that could have the effect of preventing the parties from closing on the sale once the Sale Order otherwise became effective, and providing for a more limited stay with respect to DOH.  For ease of reference, the full text of paragraph 34 of the Sale Order provides as follows:

> 34.  Notwithstanding the provisions of Fed. R. Bankr. P. 6004(h), 6006(d), and 7062, this Order shall be effective and enforceable (i) immediately upon its entry, with respect to the relief granted in this paragraph and (ii) seven calendar days following the time of its entry, as to all other relief.  Prior to the earlier of (i) the Closing or (ii) seven calendar days following the full effectiveness and enforceability of this Order, no person (including, for the avoidance of doubt, any governmental agency or department), other than the Debtor and its affiliated debtors-in-possession, may take or cause any other person to take any action with respect to or affecting the Purchased Assets, including the Participating Provider Agreement, that in any way would affect the ownership, transferability, validity, enforceability, or effectiveness of the Purchased Assets, or the performance or consummation of the Transaction or any of the decrees herein.  For the avoidance of doubt, the foregoing sentence is not intended, nor shall it be construed, to preclude (i) CMS from appealing or seeking a stay pending appeal of this Order or (ii) the Purchaser from exercising any right to terminate the Agreement pursuant to the terms thereof. With respect to the Pennsylvania Department of Health ("DOH"), the provisions of this paragraph 34 shall only apply to stay DOH (1) in its capacity as a state survey agency and/or (2) from taking any further steps in connection with the Debtor's closure process,

or otherwise seeking the revocation, surrender and/or termination of the Debtor's hospital license, prior to September 30, 2019, unless otherwise ordered by the Court, it being understood that any party may request a hearing on shortened notice to seek relief from, or revisions to, the provisions of this paragraph 34.

Sale Order, ¶ 34.

8.      On September 12, 2019, CMS filed a *Notice of Appeal* with respect to the Sale Order [Bankr. Dkt. 690], commencing the instant appeal.

**B.      Stay Pending Appeal**

9.      On September 12, 2019, CMS filed in this Court the *United States Emergency Motion for Stay Pending Appeal of the Order Under 11 U.S.C. § 105, 363, 365, 503, 507 and 525 (A) Approving Asset Purchase Agreement with Thomas Jefferson University Hospitals, Inc., (B) Authorizing Sale of Certain of Debtor's Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtor's Executory Contracts, and (D)Granting Related Relief* (the "Motion for Stay Pending Appeal") [Docket No. 4].

10.      The Debtors filed their answering brief in opposition to the Motion for Stay Pending Appeal [Docket No. 5], which was joined by the Official Committee of Unsecured Creditors on September 13, 2019 [Docket No. 10].  Jefferson also filed its brief in opposition to the Motion for Stay Pending Appeal on September 14, 2019 [Docket N. 12].  CMS filed its reply brief on September 16, 2019 [Docket No. 13].

11.      In both its Motion for Stay Pending Appeal and its reply brief, CMS argued that the issuance of a stay would not substantially injure the other parties interested in the proceeding – the third of four factors considered in connection with a motion for a stay pending appeal.  See In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015).

12.      In its Motion for Stay Pending Appeal, CMS asserted that "[n]o immediate urgency exists that justifies denial of a stay."  Motion for Stay Pending Appeal, page 24.  In

-7-

support, CMS argued that, with respect to residency slots proposed to be sold, the Consortium could not begin to receive funding until existing "residents finish their temporarily-funded residencies," such that "[e]ven those slots that open next year will not be eligible for funding until at least July 1, 2020.  Id. at page 25.  CMS further described the impact of a stay pending appeal on the Debtors merely as an "inconvenience" that should be balanced against the "federal interests at stake." Id.

13.     On September 16, 2019, the Court held a telephonic hearing to address CMS' arguments and entered the Order Granting Stay Pending Appeal.

14.     In particular, the Court found that a stay pending appeal would not harm the Debtors, but that it would merely preserve the status quo so that CMS could pursue its appeal.

## C.     **Changed Circumstances**

15.     In the two weeks since entry of the order Granting Stay Pending Appeal, the Debtors fears, which CMS assured the Court were unfounded, have been proven accurate.

16.     First, last week, while the Debtors' management team and professionals were preparing for the Bankruptcy Court authorized auction regarding the sale of the operating assets of St. Christopher's Hospital for Children, representatives for CMS appeared at Hahnemann unannounced, purportedly to conduct a "field audit."  As set forth in the Hogan Declaration, such a field audit is atypical.

17.     Second, late in the afternoon of September 30, 2019 (the first day of Rosh Hashanah – a significant Jewish holiday), the temporary manager appointed by the DOH for Hahnemann informed the Debtors that representatives of the DOH would be making an unannounced visit to Hahnemann to perform a "Closure Survey" on the very next day, October 1, 2019 (the second day of Rosh Hashanah).

18.     Certain steps necessary to close Hahnemann have not yet been completed. Ordinarily, a closing hospital would be given additional time to complete necessary closure items and the hospital license would not be terminated until all appropriate closure steps have been completed or put in place.

19.     In addition, certain key representatives of Hahnemann who are vital participants in in any such Closure Survey, including Allen Wilen, the Debtors' court approved Chief Restructuring Officer and Ronald Deskin, acting Chief Operating Officer for the Debtors' health system, are both unavailable to meet with the representatives of the DOH on October 1, 2019.

20.     In light of the foregoing, Debtors' counsel communicated with counsel for the DOH to request that the Closure Survey be delayed a few days so that Messrs. Wilen and Dreskin could be present and to confirm that additional time would be provided before the hospital license would be terminated.

21.     Attached to the Hogan Declaration is a true and correct copy of an email from counsel to the DOH, responding to counsel's inquiry, refusing to reschedule the Closure Survey and advising that the hospital license could be revoked as early as October 1, 2019, notwithstanding the incomplete status of certain items required under the closure plan.

22.     The Debtors believe that, if the hospital license is terminated by DOH, CMS will capitalize on the situation by taking steps to terminate Hahnemann's Medicare Provider Agreement so as to render impossible the Debtors' ability to close on the sale.  Thus, notwithstanding CMS' assurances that a stay pending appeal would merely preserve the status quo, and that the Debtors would not be harmed thereby, it now appears, just two weeks later, that CMS stands ready to benefit from the stay pending appeal to foreclose the Debtors' ability to consummate the sale.

## RELIEF REQUESTED

23.     The Debtors respectfully seek, pursuant to Rule 8007(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), entry of an order restoring and modifying the injunctive relief originally entered by the Bankruptcy Court as set forth in Paragraph 34 of the Sale Order, so as to ensure that the Debtors are not unfairly and irreparably harmed by the stay pending appeal.

24.     In the alternative, the Debtors seek: (a) pursuant to Bankruptcy Rule 8007(b), entry of any order suspending or modifying the Order Granting Stay Pending Appeal to permit the Debtors and Jefferson to close immediately on the sale or otherwise ensuring that the Debtors' and Jefferson's ability to effectively close on the sale is not impaired by the delay arising from the stay pending appeal, or (b) pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (the "Federal Rules"), reconsideration of the Order Granting Stay Pending Appeal to prevent manifest injustice, or (c) pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, relief from the Order Granting Stay Pending Appeal in light of the changed circumstances noted above.

## BASIS FOR RELIEF

25.     Bankruptcy Rule 8007(a)(1) provides, in pertinent part, that "Ordinarily, a party must move first in the bankruptcy court for the following relief:  . . . (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."  Fed. R. Bankr. P. 8007(a)(1)(C).

26.     Bankruptcy Rule 8007(b), in turn, provides that "A motion for the relief specified in subdivision (a)(1) – or to vacate or modify a bankruptcy court's order granting such relief – may be made in the court where the appeal is pending."  Fed. R. Bankr. P. 8007(b)(1).  The rule also requires that the motion show "that moving first in the bankruptcy court would be

impracticable," Fed. R. Bankr. P. 8007(b)(2)(A), and must include the reasons for granting the relief and the facts relied upon, affidavits or other sworn statements in support, and relevant parts of the record.  Fed. R. Bankr. P. 8007(b)(3).

27.     Federal Rule 59(e) provides that a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.  It is well established that district courts have discretionary authority to reconsider interlocutory rulings pursuant to the standard that accompanies Rule 59(e).  See, e.g., Xerox Corp. v. Genmoora Corp., 888 F.2d 345 (5th Cir. 1989).  To prevail on a motion for reconsideration under Federal Rule 59(e), the moving party must satisfy at least one of the following criteria: (1) the motion is justified by an intervening change in the controlling law; (2) the motion presents newly discovered or previously unavailable evidence; (3) the motion is necessary to correct a manifest error of fact or law; or (4) the motion is necessary to prevent manifest injustice.  See, e.g., Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

28.     Federal Rule 60(b), on the other hand, provides, in relevant part, that a court may grant relief from an order for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . (5) … applying [the judgment] prospectively is no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).

29.     For the reasons set forth herein, the Court should grant the Debtors relief under Bankruptcy Rule 8007(b) to restore and modify certain injunctive relief previously approved by the Bankruptcy Court in order to preserve the status quo while this appeal proceeds.

30.     Alternatively, the Court should either (a) grant the Debtors relief under Bankruptcy Rule 8007(b) to suspend and/or modify the Order Granting Stay Pending Appeal to either enable the Debtors and Jefferson to close on the sale or to at least ensure that the status quo is actually preserved so that the Debtors and Jefferson will not be unfairly prejudiced by operation of the stay pending appeal, or (b) reconsider the Order Granting Stay Pending Appeal under Federal Rule 59(e) to prevent manifest injustice, or (c) grant the Debtors relief from the Order Granting Stay Pending Appeal under Federal Rule 60(b) in light of the changed circumstances and to avoid injustice.

## A.     **The Court Should Grant the Debtors Relief Pursuant to Bankruptcy Rule 8007(b)**

31.     As a threshold matter, while Bankruptcy Rule 8007(b) clearly contemplates a motion for the relief outlined in Bankruptcy Rule 8007(a)(1) being filed in the court where the appeal is pending, it also requires a showing that proceeding with such relief in the Bankruptcy Court would be impractical.

32.     The Debtors do not believe there can be any dispute that it would be impractical to seek the relief requested herein from the Bankruptcy Court.   First, in light of the commencement of the appeal, the Bankruptcy Court lacks jurisdiction with respect to matters arising directly under the Sale Order, including the provisions of paragraph 34 of the Order.  See e.g., In re Teknek, LLC, 563 F.3d 639, 650 (7th Cir. 2009) (noting the "ancient stricture that, when a case is on appeal, all lower courts lose jurisdiction over it and related matters").

33.     Second, in light of this Court's Order Granting Stay Pending Appeal, the relief sought herein is not limited to the scope of paragraph 34 of the Sale Order, but also necessarily implicates the current Order Granting Stay Pending Appeal.  As such, the Debtors respectfully submit that it was patently impractical, and in fact would have been inappropriate, to ask the Bankruptcy Court to grant relief that would implicate the stay put in place by this Court.

34.     Accordingly, the Debtors respectfully submit they have satisfied their burden of demonstrating that it was appropriate to file this Motion first in this Court, as it would have been impractical to seek the relief herein first in the Bankruptcy Court.

**B.      The Court Should Restore and Modify Paragraph 34 of the Sale Order**

35.     Paragraph 34 of the Sale Order, restated in its entirety above, addressed a concern raised by the Debtors at the Sale Hearing after the Bankruptcy Court ruled that the Sale Order would be stayed for a period of time to afford CMS an opportunity to seek a stay pending appeal from this Court.

36.     Specifically, the Debtors noted that, in the absence of an injunction, CMS could take actions, or could take advantage of the actions of other parties, which could impair the Debtors' ability to close on the sale.  At the Sale Hearing, the Debtors specifically noted their concern that, either through the already in-place closure process or otherwise, the DOH might take action with respect to Hahnemann's hospital license, which CMS, in turn, would use to try to block the sale.

37.     The solution afforded by paragraph 34 of the Sale Order, however, was only temporary, especially with regard to DOH who, at the time, would not agree to a stay with respect to the hospital license beyond September 30, 2019.

38.     Now, the very moment the time period set forth in paragraph 34 (as to the DOH) is expiring, DOH appears poised to act in a way that may imminently affect the existence of Hahnemann's hospital license, which would in turn jeopardize the parties' ability to close on the sale.  Further, even though normally the DOH would not terminate the license until full completion of the closure plan, the DOH has made clear  that it may seek to revoke the license as early as October 1, 2019.

35969700.1 10/01/2019

39.     There is no legitimate reason for the DOH to revoke Hahnemann's hospital license at this time.  There has been no material change in circumstances at the hospital since the Sale Hearing and there are no risks to patient safety, as the hospital discontinued admitting patients in July.

40.     In light of these unique and urgent circumstances, the Debtors respectfully suggest that cause exists under Bankruptcy Rule 8007(a)(1)(C) – made applicable to this Court via Bankruptcy Rule 8007(b)(1)  -- to restore and modify the provisions of paragraph 34 of the Sale Order.

41.     In particular, the Debtors ask that this Court restore the injunctive provisions of paragraph 34 so as to prevent all parties, other than the Debtors, from taking any actions that might affect the Debtors' and Jefferson's ability to close on the sale on the same terms as set forth in the Sale Order, and to prevent the DOH from taking action with respect to the closure plan or in connection with Hahnemann's hospital license for at least an additional thirty (30) days, without prejudice to further extensions depending on the status of this appeal.

42.     The Debtors respectfully suggest that grounds exist for this relief both by virtue of the plain language of Bankruptcy Rule 8007 as well as by the reasoning of the Court in granting the stay pending appeal.

43.     First, while most commonly use to grant a stay pending appeal in the first place, Bankruptcy Rule 8007(a)(1)(C) clearly contemplates additional relief, including suspension, modification, or restoration of an injunction that has already been imposed.  The changed circumstances in this case, including with respect to the imminent closure survey and the potential immediate termination of Hahnemann's license, the irregular "field audit" by CMS, and the actions expected to be taken by CMS to moot this appeal if the license is revoked justify

-14-

restoration and modification of the stay originally imposed by the Bankruptcy Court to actually preserve the status quo.

44.     Second, the relief herein is warranted in light of the reasoning of this Court in granting the stay pending appeal in the first place, including, with respect to balancing the respective harms, the Court's acceptance of CMS's argument that the Debtors would not be harmed by a stay pending appeal and that such a stay would preserve the status quo. The relief sought herein merely addresses a gap left by operation of the Order Granting Stay Pending Appeal, to actually preserve the status quo.

## C.     **Alternatively, the Court Should Modify the Order Granting Stay Pending Appeal**

45.     The Debtors suggest, in the alternative, the Bankruptcy Rule 8007 grants this Court authority to modify the Order Granting Stay Pending Appeal to enjoin actions that, in the absence of such relief, might impair the parties' ability to close.

46.     As noted above, Bankruptcy Rule 8007(a)(1)(C) contemplates modification of an injunction while an appeal is pending. By its plain language, the rule provides a mechanism through which an existing injunction, such as the Order Granting Stay Pending Appeal, may be modified.

47.     For the reasons set forth above, the Debtors understand that it was the intention of this Court, in granting the Order Granting Stay Pending Appeal, to preserve the status quo for the duration of the appeal, and not so that CMS could use the delay as a sword to kill the sale before the parties could close.

48.     Accordingly, the Debtors respectfully suggest, in light of the changed circumstances noted herein, that the Order Granting Stay Pending Appeal should be modified so that the effect of the stay pending appeal can be re-aligned with the Court's original intention. In the absence of modification, the Debtors will be irreparably harmed by the delay arising out of

35969700.1 10/01/2019

the stay pending appeal – which the Debtors do not believe was the Court's intent and is directly counter to the assurances given to the Court by CMS.

**D.**   **Alternatively, the Court Should Suspend the Order Granting Stay Pending Appeal**

49.    In the alternative, the Bankruptcy Rule 8007 grants this Court authority to suspend the Order Granting Stay Pending Appeal to permit the Debtors and Jefferson to close immediately on the sale.

50.    Bankruptcy Rule 8007(a)(1)(C), by its plain language, contemplates suspension of an injunction while an appeal is pending, and thus provides a basis to suspend the Order Granting Stay Pending Appeal.

51.    The Debtors suggest that suspension of the Order Granting Stay Pending Appeal is warranted in light of the changed circumstances noted above which demonstrate that the status quo is *not* being maintained while the appeal is being prosecuted.

52.    As CMS acknowledged in its briefing with respect to the Motion for Stay Pending Appeal, an appellant bears the burden with respect to all of the elements of seeking a stay pending appeal, including the harm (or lack thereof) to the other parties in the case as a result of a stay pending appeal.

53.    In its briefing, CMS assured the Court that the Debtors would not be harmed because there was no imminent need to close on the sale, focusing on the fact that permanent residency slots would not start coming back to the purchaser until July 1, 2020.

54.    As discussed in detail above, however, changed circumstances, including with respect to actions taken directly by CMS, demonstrate that there is an imminent need to close on the sale and that continued delay resulting from the stay pending appeal only provides more opportunity for CMS to declare the sale moot.

55.     The Debtors suggest that the changed circumstances call into question whether adequate grounds still exist to warrant a stay pending appeal – as now the harms to the Debtors from such a stay are no longer mere possibility, but appear likely, if not certain, and are imminent.

56.     Accordingly, the changed situation effectively nullifies a required element of CMS's argument for a stay pending appeal, without which the Court should suspend the stay so that the Debtors and Jefferson can close without further delay.

**E.      Alternatively, the Court should Reconsider Under Federal Rule 59(e)**

57.     If the Court finds that it improperly concluded CMS established all the required bases for a stay pending appeal, then it should reconsider and lift the stay.  See Lopez v. Vaquera, 2013 WL 12098743, *2 (W.D. Tex. Sep. 11, 2013) (lifting a previously granted stay pending appeal after finding that the court "improperly concluded that [appellant] would be irreparably injured absent a stay").

58.     In the Lopez case, the Court lifted the stay, noting that the determination of the harm to the appellant was key in determining whether to grant a stay pending appeal.  Similarly in this case, whether the appellees would be harmed by imposition of a stay pending appeal is critical – and the Court improperly concluded that the Debtors and Jefferson would not be harmed by stay pending appeal.

59.     As noted herein, the rapidly changing circumstances of just the two weeks following entry of the Order Granting Stay Pending Appeal show the harm that will result if the stay pending appeal remains in place.  Namely, while the Debtors and Jefferson are stayed from closing on the sale, CMS, both on its own and taking advantage of the process being carried out by the DOH, appears poised to utilize the delay to prevent the closing from ever occurring – regardless of the result of this appeal.

60.     Accordingly, in light of these new facts and circumstances, the Court should conclude that the stay pending appeal was improperly granted, and should lift the stay so that the Debtors and Jefferson can close on the sale.

**F.     Alternatively, the Court Should Grant Relief Under Federal Rule 60(b)**

61.     Federal Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); … (5) … applying [the judgment] prospectively is no longer equitable; or (6) any other reason that justifies relief." See Fed. R. Civ. P. 60(b)(1), (2), (5) and (6).

62.     Additionally, Rule 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding. See Fed. R. Civ. P. 60(c)(1).

63.     Here, the Debtors suggest that the Court should grant relief with respect to the Order Granting Stay Pending Appeal under either subdivisions (1), (2), (5) or (6) of Federal Rule 60(b).

64.     First, the Court's decision to grant a stay pending appeal, without also preserving and extending the concurrent injunctive provisions of paragraph 34 of the Sale Order reflects either mistake or inadvertence by the Court – understandable in light of the lack of time the Court had to consider and rule on the Motion for Stay Pending Appeal.  Failing to address this potential for abuse of the Order Granting Stay Pending Appeal is further understandable in light of the Court's reliance on CMS's assurances that granting stay pending appeal would merely preserve the status quo – which clearly has not been the case.

65.     Second, the following constitutes newly discovered evidence that was not available when the Court originally considered the Motion for Stay Pending Appeal: (1) the unannounced site visit by CMS; (2) the unannounced Closure Survey by DOH (in the middle of the Jewish holidays); and (3) the DOH's revelation that, even if the Closure Survey is not complete, the license may still be immediately revoked.   These new facts and changed circumstances warrants relief from the Order Granting Stay Pending Appeal.

66.     Further, and for the reasons set forth above, it is no longer equitable to apply the Order Granting Stay Pending Appeal prospectively, as the order is now being used as a sword to preclude the sale transaction, when the order was designed merely to maintain the status quo.

67.     Finally, to the extent these facts do not fit neatly within Federal Rule 60(b)(1) or (2), the Debtors suggest that relief is warranted pursuant to subdivision (6) – "any other reason that justifies relief."   As noted above, CMS's argument, and the Court's reasoning, were all premised on the understanding that stay would preserve the status quo.   Quite to the contrary, the effect has been to merely restrict the Debtors and Jefferson – by not permitting them to close on the sale, while giving CMS an opportunity to either sit back and wait for circumstances to prevent closing, or, as it seems to the Debtors, to take an active role in ensuring that the sale cannot close.   Under either scenario, the Court should grant relief from the Order Granting Stay Pending Appeal.

[remainder of page left intentionally blank]

## <u>CONCLUSION</u>

For the above stated reasons, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **<u>Exhibit C,</u>** granting the Motion.

Dated: October 1, 2019          **SAUL EWING ARNSTEIN & LEHR LLP**

       By:     *<u>/s/ Mark Minuti</u>*
               Mark Minuti (DE Bar No. 2659)
               Monique B. DiSabatino (DE Bar No. 6027)
               1201 N. Market Street, Suite 2300
               P.O. Box 1266
               Wilmington, DE  19899
               Telephone: (302) 421-6800
               Fax: (302) 421-5873
               mark.minuti@saul.com
               monique.disabatino@saul.com

                   -and-

               Jeffrey C. Hampton
               Adam H. Isenberg
               Aaron S. Applebaum (DE Bar No. 5587)
               Centre Square West
               1500 Market Street, 38th Floor
               Philadelphia, PA 19102
               Telephone: (215) 972-7777
               Fax: (215) 972-7725
               jeffrey.hampton@saul.com
               adam.isenberg@saul.com
               aaron.applebaum@saul.com

               *Counsel for Debtors and Debtors in Possession*